IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FIRAS M. AYOUBI,
#R66956,

        Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
CHRSITINE BROWN,
SCOTT THOMPSON,
DR. ALBERTO BUTALID,
DR. PERCY MEYERS,
DR. STEPHEN RITZ, and
ALISA DEARMOND,

        Defendants.

Case No. 18-cv-01689-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Firas Ayoubi, an inmate in the Illinois Department of Corrections ("IDOC"), filed a Complaint for deprivations of his constitutional rights that occurred at Pinckneyville Correctional Center. After conducting the preliminary review of Ayoubi's complaint pursuant to 28 U.S.C. § 1915A, the following claim survived:

> **Count 1: Eighth Amendment claim against Wexford Health Sources, Inc., Christine Brown, Scott Thompson, Dr. Alberto Butalid, Dr. Percy Meyers, Dr. Stephen Ritz and Alisa Dearmond for exhibiting deliberate indifference to Ayoubi's serious medical needs (worsening neurological symptoms associated with pain).**

(Doc. 4). As to Thompson, Brown, and Wexford, the Court found that Ayoubi stated a viable claim against them "to the extent that he is alleging these defendants implemented and/or maintained cost-cutting policies aimed at denying inmate access to expensive

treatment (by delaying or denying referrals to specialists outside the prison) (*see* Doc. 1, p. 11, 13-14, 18-19). *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994) (noting that personal involvement can take the form of formulating and directing an unconstitutional policy)." (Doc. 4, p. 4).

This matter is now before the Court on a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Christine Brown and Scott Thompson. (Docs. 93, 94). Ayoubi opposes the motion.[1] (Doc. 105).

## FACTS

On May 23, 2018, and May 27, 2018, Ayoubi filed two grievances for single housing classification and for medical treatment and low gallery due to his neurological issues. (Doc. 94-1, pp. 4-7). The relief requested in both grievances is similar: to be housed in a single cell until symptoms regress and to see a neurologist for diagnosis and treatment and low gallery/bunk classification (and possibly single housing as requested in a previous grievance). (*Id*.). On June 4, 2018, in response to both grievances, Counselor Hess stated: "Per C. Brown, HCUA: 'He arrived at IDOC 12/2017 with this nervous tick is what mental health has documented. He has been seen by a few different healthcare providers

---

[1] On September 18, 2019, Ayoubi filed a notice of appeal of the September 5, 2019, Memorandum and Order denying the motion for preliminary injunction (Doc. 113) and on November 4, 2019, Ayoubi filed a notice of appeal of the October 24, 2019, Memorandum and Order denying the motion to reinstate medical malpractice claim (Doc. 132). The filing of the notice of appeal does not, however, divest this Court of jurisdiction to rule on the motion for summary judgment on the issue of exhaustion of administrative remedies. The Supreme Court said in *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), that "[t]he filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." But "*Griggs* notes an important limitation on the rule that just one court at a time possesses jurisdiction: the doctrine applies only to 'those aspects of the case involved in the appeal.'" *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). These appeals seek decisions regarding the denial of a preliminary injunction and the denial of reinstating a medical malpractice claim, not a decision on whether Ayoubi exhausted his administrative remedies on surviving claims.

with no consistency in this behavior. Wexford denied a neurology consult in the past. He has been referred back to the Physician for a follow up on this condition. He should be seen this week.'" (Doc. 94-4, p. 2). Ten days later, Grievance Officer Hale issued a report that recommended Ayoubi's grievance be denied, and Defendant Thompson concurred with Officer Hale on June 21, 2018. (Doc. 94-1, p. 3). Ayoubi appealed the grievance to the Administrative Review Board ("ARB") on July 10, 2018. (*Id.*). On August 13, 2018, Patty Sneed with the ARB denied Ayoubi's grievance finding that the issue was appropriately addressed by the facility administration, and John Baldwin concurred with that decision the next day. (Doc. 94-1, p. 2).

Ayoubi does not name either Defendant Brown or Defendant Thompson in his grievances.

## **LEGAL STANDARDS**

"Summary judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit

is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). In other words, a plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if

there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an IDOC inmate, Ayoubi was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. See 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures

specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the ARB within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## ANALYSIS

Defendants maintain that Ayoubi's May 2018 grievance regarding his medical treatment does not reference any action or inaction by Defendants Brown or Thompson, thus, Ayoubi failed to exhaust his administrative remedies against them.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the Court finds that Defendants have not met their burden and that Ayoubi did exhaust his claim as to both Defendant Brown and Defendant Thompson. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names or not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez,* No. 11-3068, 510 F. App'x 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v.*

*Shepherd,* No. 13-2651, 552 F. App'x 591, 593 n. 1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 442 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Johnson v. Johnson*, 285 F.3d 503, 522 (7th Cir. 2004).

Here, the undersigned finds that Ayoubi provided enough information to put the prison on notice of the nature of his claims. Both Defendant Brown and Defendant Thompson were part of the grievance process and participated in denying the grievance. Thus, they may be liable for deliberate indifference as Ayoubi's request fell on "deaf ears." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Further, Ayoubi is not required to file successive grievances regarding the same issues if the conduct continues. Defendants fail to cite to any case law requiring an inmate to file an additional grievance against grievance officials who reviewed his grievance. As both Defendant Brown and Defendant Thompson reviewed and provided input regarding his grievance, Ayoubi did

not need to file separate, additional grievances against them for failing to obtain treatment for him after reviewing his original grievance. As such, the Court finds that Ayoubi exhausted his administrative remedies against Defendant Brown and Defendant Thompson.

## CONCLUSION

For these reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 93).

**IT IS SO ORDERED.**

DATED:   January 14, 2020

                                        **NANCY J. ROSENSTENGEL**
                                        **Chief U.S. District Judge**