# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FIRAS M. AYOUBI,**<br>**#R66956,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 18-cv-01689-NJR** |
| **WEXFORD HEALTH SOURCES, INC.,**<br>**CHRISTINE BROWN,**<br>**SCOTT THOMPSON,**<br>**DR. ALBERTO BUTALID,**<br>**DR. PERCY MYERS,**<br>**DR. STEPHEN RITZ, and**<br>**ALISA DEARMOND,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Firas Ayoubi, an inmate of the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Dixon Correctional Center ("Dixon"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for inadequate medical treatment while at Pinckneyville Correctional Center ("Pinckneyville").

Currently before the Court are the following motions filed by Ayoubi: Motion for Leave to File an Amended Complaint (Docs. 166, 177), Motion to Substitute Party (Doc. 185), Motion for Issuance of a Subpoena (Doc. 178), and Motion for Recruitment of Counsel (Doc. 156). Also before the Court is a Motion to Strike or Admonish filed by all Defendants (Docs. 186, 187) and a Motion for Protective Order (Doc. 179) filed by Defendant Wexford Health Sources, Inc.

**MOTION FOR LEAVE TO AMEND (DOCS. 166, 177)
AND MOTION TO SUBSTITUTE PARTY (DOC. 185)**

Following an initial screening of the Complaint pursuant to 28 U.S.C. § 1915A,

Ayoubi is proceeding with the following claim:

**Count 1:**     Eighth Amendment claim against Wexford Health Sources, Inc., Christine Brown, Scott Thompson, Dr. Alberto Butalid, Dr. Percy Meyers, Dr. Stephen Ritz, and Alisa Dearmond for exhibiting deliberate indifference to Plaintiff's serious medical needs (worsening neurological symptoms and associated pain).

(Doc. 4). Ayoubi has now filed a Motion for Leave to File an Amended Complaint.

(Docs. 166, 177).[1] In the proposed amended complaint, he brings additional allegations

against Wexford Health Sources, Inc. ("Wexford") and the president and board of

directors of Wexford. He alleges that in an effort to save costs these defendants

unlawfully (1) charge inmates a $5 copay without providing treatment; (2) repeatedly

charge the $5 copay to treat chronic or recurring conditions; and (3) deny clinically

necessary treatment through the use of a collegial review system. He brings claims of

racketeering, consumer fraud, negligence, conspiracy, breach of contract, unjust

enrichment, and claims under the Illinois Uniform Commercial Code.

Defendants argue Ayoubi's motion should be denied because the motion is

untimely, Defendants will suffer undue prejudice, and the amendments would be futile,

as all the proposed new counts fail to state a claim. (Docs. 168, 175). Ayoubi submitted a

reply brief arguing that he had to wait to file the motion because he needed to first

exhaust his administrative remedies, and his claims require that he establish a pattern of

---

[1] Ayoubi submitted a corrected version of the proposed amended complaint on June 4, 2020. (Doc. 177).

behavior, which takes time to gather sufficient facts. (Doc. 172).

"Generally, a motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2). The rule provides that courts 'should freely give leave when justice so requires.'" *Alioto v. Town of Lisbon,* 651 F. 3d 715, 719 (7th Cir. 2011) (quoting FED. R. CIV. P. 15(a)(2)). Ayoubi has filed his motion for leave to amend after the deadline set in the scheduling order, and thus, that deadline must be modified. Rule 16(b)(4) requires that courts to first apply a heightened standard of "good-cause" in order to modify the scheduling order. *See Alioto,* 651 F.3d at 719 ("The two-step process is consistent with nearly every one of our sister circuits[.]") (citations omitted). The good cause standard of Rule 16(b) "primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted) (upholding a denial of a motion for leave to amend nine months after the deadline to amend had passed).

Here, Ayoubi has requested to file an amended complaint 10 months past the deadline to amend set by the Court. (Doc. 62, p. 4). Pursuant to the Initial Scheduling Order, Ayoubi had until July 3, 2019, to file a motion for leave to amend the complaint. (*Id.*). He was advised that failure to file a motion for leave to amend by this date would likely bar further amendment of the complaint, except for good cause shown. (*Id.*). Ayoubi claims that he filed the motion past the deadline because he needed further time to fully investigate the new claims, and he was awaiting responses from the Administrative Review Board ("ARB") to grievances he had submitted. (Doc. 166, p. 1-2). The exhibits Ayoubi has submitted in support of his motion demonstrate, however,

that he did not act with diligence in attempting to adhere to the deadlines set in the scheduling order. Ayoubi asserts he started investigating his potential claims by writing a request for documents to Wexford on August 3, 2018, before initiating this lawsuit on September 6, 2018. (Doc. 172, p. 20). He also alleges he filed grievances grieving the copay policy and asking for Wexford to disclose financial information as early as September 3, 2018. (*Id.* at p. 12). After not receiving any responses from staff at Pinckneyville, Ayoubi sought further assistance from the ARB. The ARB returned his grievances on June 18, 2019, and yet, he waited almost year from receiving that response to file his motion. (*Id.* at p. 9). Despite knowing of potential claims regarding Wexford's copay policy and conducting investigations since the beginning of this suit, Ayoubi never requested an extension of the deadline to amend. Accordingly, the Court does not find good cause for allowing Ayoubi to file the proposed amended complaint 10 months past the deadline, and the motion is denied. *See Arriogo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016) (affirming the denial of leave to amend four months after the deadline); *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (eight months); *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (six months); *Alioto*, 651 F.3d at 720 (eight months).

Because Ayoubi's motion to amend is denied, his Motion to Substitute Party asking the Court to substitute Wexford president and the board of directors with specific individuals is denied as moot. (Doc. 185). Nonetheless, the Court must still address Defendants' response to the motion. In their response, Defendants Wexford, Butalid, Myers, Ritz, and Dearmond argue that the Motion to Substitute Party was filed prematurely, and Ayoubi persists in filing materials in advance of the Court's ruling on

the Motion for Leave to File an Amended Complaint. (Doc. 195). They state that the Motion to Substitute Party, which contains names and addresses of Wexford stockholders, was intended to harass and intimidate individuals who have nothing to do with the medical treatment at issue in this case. Defendants ask the Court to sanction Ayoubi by striking the motion from the record, filing it under seal, and requiring him to post a $5,000.00 bond pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Court will grant their request in part. Although normally an address is not the type of personal information "that is entitled to protection under the relevant Seventh Circuit precedents[,]" *Hartford Fire Ins. Co. v. Fredman Bro. Furniture Co.,* No. 05-627-GPM, 2006 WL 8455773, at *1 (S.D. Ill. Sept. 15, 2006), the Court finds good cause to exclude from the public record the names and addresses of persons who are not parties to this case and who were included in the public record unnecessarily. *See Goesel v. Boley Intern. (H.K.) Ltd.,* 738 F.3d 831, 833 (7th Cir. 2013). Additionally, this information has no effect on the disposition of this litigation. *Id.* (citing *In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010). The Court will, therefore, order the Clerk of Court to seal the Motion to Substitute Party (Doc. 185) and to file a redacted version which excludes the individual names and addresses listed.

Defendants' request for sanctions under Rule 11, however, will be denied. Defendants have included their request for sanctions in their reply brief to Ayoubi's Motion to Substitute Party. This is not a proper way to request sanctions. Rule 11 requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violations Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

## MOTION TO STRIKE OR ADMONISH (DOC. 186)

Defendants filed a motion requesting the Court to strike the Supplemental Reply (Doc. 181) and the Reply to Wexford's Response to the Motion for Issuance of Subpoena (Doc. 183) filed by Ayoubi. (Docs. 186, 187).[2]  The motion shall be granted in part. As the Court does not allow parties to file supplemental briefs without leave from the Court, the Supplemental Reply (Doc. 181) will be stricken. SDIL-LR 7.1(g). The Court denies Defendants' request to strike Ayoubi's reply brief (Doc. 183) for exceeding the page requirements established in Local Rule 7.1 and for failure to state the exceptional circumstances that warranted a reply.

## RECRUITMENT OF COUNSEL (DOC. 156)

There is no funding for appointed counsel in civil cases, and private attorneys are asked to represent civil litigants on a *pro bono* basis only after a litigant has first made his own reasonable attempt to secure counsel. Only then if the complexity of the case, considered with the competence of the litigant, indicates that counsel is necessary for a reasonably fair presentation of the case will the court exercise its discretion to recruit counsel. *See Romanelli v. Suliene*, 615 F.3d 847, 851-52 (7th Cir. 2010) (citing *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

Ayoubi has demonstrated a reasonable attempt to obtain counsel on his own, and the circumstances presented at this stage in the litigation warrant recruitment of counsel by this Court. Because the case is dependent on medical evidence and the state of mind

---

[2]  The Court **GRANTS** the Motion to Join Codefendants' Motion to Strike or Admonish filed by Defendants Brown and Thompson. (Doc. 187).

of Defendants, the Court finds that discovery has become too challenging for Ayoubi to continue representing himself. *See Perez v. Penoglio,* 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even more challenging in cases, like [Plaintiff's], where complex medical evidence (including expert testimony) is needed in order to "assess the adequacy of treatment received."). *See also Thomas v. Wardell,* 951 F.3d 854, 860 (7th Cir. 2020).

Accordingly, the Court deems it both appropriate and necessary to recruit an attorney to represent Ayoubi in this matter going forward. The Court has randomly selected counsel through the Case Management/Electronic Case Filing ("CM/ECF") system to represent him in conducting discovery and continuing to prosecute his claims *in this case only*. Because counsel has been recruited to represent him, Ayoubi's Motion for Issuance of Subpoena (Doc. 178) will be denied without prejudice so that recruited counsel can evaluate how to proceed with discovery.

## MOTION FOR PROTECTIVE ORDER

Defendant Wexford has filed a Motion for Protective Order stating that Ayoubi has requested numerous documents that contain confidential and proprietary business information, including copies of written contracts, policies, procedures, protocols, and other internal records. (Doc. 178). Wexford argues that a protective order is necessary to maintain the confidentiality of the protected documents and to prohibit their use in other lawsuits where protective orders have not been entered. Defendants also assert that the proposed protective order allows for disclosure in a manner consistent with IDOC facility security and the safety of IDOC employees and contractors. Ayoubi has filed a response to the motion objecting to the provisions of the proposed protective order that permit him

to inspect the discovery documents produced by Wexford, but prohibit him from keeping or copying the documents. (Doc. 184).

The Court finds good cause to grant the motion and agrees that the proposed protective order allows Ayoubi full disclosure of the documents requested, while protecting the proprietary and confidential nature of the documents. FED. R. CIV. P. 26(c). *See Lewis v. Henneman,* No. 16-CV-733-JDP, 2017 WL 6389722, at *2 (W.D. Wis. Dec. 14, 2017) ("A compromise solution, such as allowing the plaintiff to view the documents but not retain possession of them, is often appropriate."). The proposed protective order includes any document that Wexford labels "Confidential and Subject to Protective Order," however, and Wexford has not shown good cause for why "any and all documents that [it believes] should be protected" should be prevented from disclosure. *Gonzalez v. Feinerman,* 11-cv-170-DGW, 2015 WL 249775, at *1 (S.D. Ill. Jan. 20, 2015). *See also Robinson v. Pfister,* No. 17 CV 1051, 2020 WL 3453130, at *3 (N.D. Ill. June 24, 2020). The Court grants the motion, but the application of the Protective Order will be limited to the following categories of internal records and documents:   policies, procedures, protocols, contracts, employee files, and job descriptions. The parties are reminded that they may file a motion for modification of the Protective Order as needed.

### REQUEST FOR COPIES (DOC. 196)

Ayoubi's request for a copy of the Local Rules is denied. (Doc. 196). Ayoubi is advised that in order to obtain a copy of the Local Rules he must pay the required fee of $3.00. Upon receipt of the $3.00 fee, the Clerk of Court will forward a copy of the Local Rules to him.

DISPOSITION

For the reasons stated above, the following motions filed by Plaintiff Ayoubi are **DENIED without prejudice:**   the Motions for Leave to File an Amended Complaint (Docs. 166, 177), the Motion for Issuance of a Subpoena (Doc. 178), and the Motion to Substitute Party (Doc. 185). The request for a copy of the Local Rules (Doc. 196) is also **DENIED without prejudice.**

The Motions to Join in Codefendants' Responses (Docs. 182, 187) filed by Defendants Thompson and Brown are **GRANTED.**

The Motion to Strike or Admonish (Doc. 186) is **GRANTED in part** and **DENIED in part.** The Clerk of Court is **DIRECTED** to **STRIKE** Doc. 181 from the docket. The Clerk of Court is further **DIRECTED** to **SEAL** the Motion to Substitute Party (Doc. 185) and to file a version with the names and addresses listed in paragraphs 1 and 3 **REDACTED**.

The Motion for Protective Order (Doc. 179) filed by Wexford is **GRANTED.**

The Motion for Recruitment of Counsel (Doc. 156) is **GRANTED**. In accordance with 28 U.S.C. § 1915(e)(1) and Local Rule(s) 83.1(i) and 83.9(b), attorney **Eric A. Todd**, located at 7700 Bonhomme Avenue, Suite 650, St. Louis, MO, 63105, is **ASSIGNED** to represent Plaintiff Ayoubi in this civil rights case. On or before **August 25, 2020,** assigned counsel shall enter his appearance in this case. Attorney Todd is free to share responsibilities with an associate who is also admitted to practice in this district court. Assigned counsel, however, must enter the case and shall make first contact with Ayoubi, explaining that an associate may also be working on the case. Ayoubi should wait for his attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk of Court is **DIRECTED** to transmit this Order and copies of the docket sheet to attorney Todd. The electronic case file is available through the CM/ECF system.

Now that counsel has been assigned, Ayoubi **SHALL NOT** personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation. If counsel is allowed to withdraw at the request of Ayoubi, there is no guarantee the Court will appoint other counsel to represent him.

Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Ayoubi and his counsel are **ADVISED** that, because Ayoubi is proceeding *in forma pauperis*, if there is a monetary recovery in this case (either by verdict or settlement), any unpaid out-of-pocket costs must be paid from the proceeds. *See* SDIL-LR 3.1(c)(1). If there is no recovery in the case (or the costs exceed any recovery), the Court has the discretion to reimburse expenses.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available. The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement. Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived. *See* SDIL-LR 83.13. The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs. In no event will funds be reimbursed if the expenditure is found to be without a proper basis. The Court has no authority to pay

attorney's fees in this case. No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed. Counsel may be reimbursed for PACER fees for this case.

The district court has entered into an agreement with attorney James P. Chapman and the Illinois Institute for Community Law to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client. Mr. Chapman can be reached by phone at (312) 593-6998 or email at JamesPChapman@aol.com. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district. In addition, the Court's website, www.ilsd.uscourts.gov, includes a guide for attorneys which is available as a resource. It is listed under "Rules and Forms" as "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases." The Court encourages appointed counsel to consult it and Mr. Chapman as needed.

As of this date, Ayoubi's contact information is:

> **FIRAS M. AYOUBI, #R66956,**
> **Dixon Correctional Center**
> **2600 North Brinton Ave.**
> **Dixon, IL 61021**

**IT IS SO ORDERED.**

**DATED:   August 11, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**